In the INterest of KNR a Child















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-300-CV

IN THE INTEREST OF K.N.R., A CHILD

 

From the County Court at Law No. 2
Johnson County, Texas
Trial Court # D200000001
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
DISSENTING OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â For the reasons expressed in my dissenting opinion to B.L.D., I respectfully dissent. In the
Interest of B.L.D., 56 S.W.3d 203 (Tex. App.âWaco 2001, pet. filed, Nov. 26, 2001) (see
dissenting opinion section entitled âBroad Form Submissionâ).
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Dissenting opinion delivered and filed April 24, 2002
Do not publish



:"Palatino","serif"'>A jury found Frederick
Villa guilty of the offense of murder and assessed his punishment at
thirty-five years imprisonment.Â  In five issues, Villa appeals.Â  We will affirm.

We begin with VillaÂs
third and fourth issues in which he contends that the evidence is legally and
factually insufficient to support his conviction.

The court of criminal appeals recently
held that there is Âno meaningful distinction between the Jackson v.
Virginia legal-sufficiency standard and the Clewis
factual-sufficiency standardÂ and that Âthe Jackson v. Virginia
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.Â  All other cases to the contrary, including Clewis, are
overruled.ÂÂ  Brooks v. State, 323 S.W.3d 893, 902, 912 (Tex. Crim. App.
2010).Â  Accordingly, we will apply the same standard of review to both of VillaÂs
sufficiency complaints.

When reviewing a
challenge to the sufficiency of the evidence to establish the elements of a
penal offense, we must determine whether, after viewing all the evidence in the
light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.Â  See
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
560 (1979).Â  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.Â  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).Â  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.Â  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).

The evidence, viewed in
the light most favorable to the verdict, is as follows:Â  At around 10:20 p.m.
on September 13, 2005, Steven Gronowski drove himself and his cousin, Bobby
Rodriguez, to a convenience store in Waco.Â  Upon arrival at the store,
Rodriguez went inside to buy a few things while Gronowski stayed in the car.Â 
Villa and Carlos Garcia then pulled up at the gas pumps in another car and went
into the store.Â  While Rodriguez was paying at the counter, Villa and Garcia
whispered to one another at the side of the counter. Â Rodriguez then exited the
store.Â  Villa and Garcia followed him after Villa quickly left $15 on the
counter to pay for gas.

Villa and Garcia
confronted Rodriguez outside the passenger side door of GronowskiÂs car.Â  Villa
and Garcia began arguing with Rodriguez and then started fighting with him.Â 
Garcia hit Rodriguez first and then Villa began fist-fighting with him.Â  Garcia
pulled out a gun and began hitting Rodriguez with it.Â  While he was hitting him
with the gun, Garcia missed Rodriguez and hit the roof of GronowskiÂs car.Â  The
gun slipped out of GarciaÂs hand and flew across the parking lot.Â  When
Gronowski saw this, he started to get out of his car, but before he was even
able to completely step out of his car, Garcia retrieved the gun.Â  Garcia put
the clip back in the gun, cocked it, and then pointed the gun at Gronowski and
told him not to do anything stupid or he would kill him.Â  Garcia then ran back
to where Rodriguez was.

In the meantime, Villa
and Rodriguez had continued fighting.Â  Gronowski testified that Villa also had
a gun.Â  Rodriguez hit Villa hard and knocked him back.Â  Villa then tackled
Rodriguez and knocked him to the ground.Â  As Rodriguez was trying to get up off
the ground, Garcia ran over and kicked his elbow out from underneath him.Â 
Rodriguez fell and hit the bumper of the car with the back of his head.Â  Garcia
then swung the gun and hit Rodriguez in the head and a shot rang out.Â  Villa
and Garcia then ran to their car and left.Â  Rodriguez died approximately two days
later.

Dr. Ted Smith, the
primary physician who treated Rodriguez, determined that the cause of
RodriguezÂs death was blunt trauma to the brain.Â  Dr. Smith testified that
Rodriguez had a scalp wound that he felt was due to a bullet but that the
bullet did not actually enter RodriguezÂs skull; rather, it Âskied along the
outside of the skull through the scalp.ÂÂ  People who suffer this type of injury
are usually not killed.Â  However, Rodriguez also had a fracture of the skull
extending from the top of the skull down toward both ears.Â  Dr. SmithÂs opinion
was that the skull fracture was caused by being struck in the head by a blunt
object, not a gunshot.Â  The blunt object could have been a pistol, or the
injuries could have been sustained if RodriguezÂs head bounced off a car or the
sidewalk when he was forced to the ground.Â  However, the trauma to the brain
could not have been sustained solely from a beating with fists because usually
the bones of the hand will break before the skull will break.

Dr. Lynn Salzberger,
the medical examiner who conducted an autopsy on Rodriguez, testified that
RodriguezÂs manner of death was homicide.Â  Most of RodriguezÂs injuries were
located on his head.Â  The main injury was an injury on the top of his head that
involved a skull fracture and some swelling, bruising, and tearing of the brain
immediately beneath the skull fracture.Â  She was uncertain whether the injury
was a blunt force injury or a gunshot wound injury.Â  She explained that all of
the landmarks that she typically looks at as a forensic pathologist to
determine whether the injury is a blunt force injury or a gunshot wound injury
were gone because the surgeons had worked on Rodriguez and there was also some
healing that had occurred.

The courtÂs charge
included an instruction on the law of parties and the application paragraph
applied the law of parties to the facts of this case.

A person is guilty of
murder, as charged in this case, if he (1) intentionally or knowingly causes
the death of an individual, or (2) intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an
individual.Â  Tex. Penal Code Ann. Â§
19.02(b)(1), (2) (Vernon 2003).Â  A person is criminally responsible as a party
to the offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both.Â  Id. Â§
7.01(a) (Vernon 2003).Â  A person is criminally responsible for the offense committed
by the conduct of another if, Âacting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.ÂÂ  Id. Â§ 7.02(a)(2)
(Vernon 2003).

Villa argues that the
evidence is insufficient to support his conviction because there is no evidence
that he used a gun to hit or shoot Rodriguez and because there is a Âlack of
evidence that Appellant had the culpability required in a murder charge, or
that he did anything to promote or assist the use of the gun and the causing of
RodriguezÂs death by Garcia.Â

Proof of a culpable
mental state almost invariably depends upon circumstantial evidence.Â  Krause
v. State, 243 S.W.3d 95, 111 (Tex. App.ÂHouston [1st Dist.] 2007, pet.
refÂd).Â  In determining whether a defendant participated in an offense as a
party, the fact-finder may examine the events occurring before, during, and
after the commission of the offense, and may rely on actions of the defendant
that show an understanding and common design to commit the offense.Â  Frank
v. State, 183 S.W.3d 63, 73 (Tex. App.ÂFort Worth 2005, pet. refÂd).

A rational trier of
fact could have found that Villa was aware that a gun was going to be used in
the commission of the offense.Â  Gronowski testified that both Garcia and Villa
had guns.Â  Furthermore, a rational trier of fact could have found that, even if
Villa did not know before the attack that Garcia intended to use a gun, it
became obvious to him during the attack that Garcia did have such an intent,
yet he continued to participate in the attack.Â  See Crutcher v. State,
969 S.W.2d 543, 546-47 (Tex. App.ÂTexarkana 1998, pet. refÂd). Â Thus, a
rational trier of fact could have found that Villa, as a party, intentionally
or knowingly caused RodriguezÂs death or, with intent to cause serious bodily
injury to Rodriguez, committed an act clearly dangerous to human life that
caused RodriguezÂs death.Â  See Tex.
Penal Code Ann. Â§ 19.02(b)(1), (2); Jackson, 443 U.S. at 318-19,
99 S.Ct. at 2789.

Having decided that the
evidence is sufficient to prove that Villa is criminally responsible as a party
to the offense because the offense was committed by another for which he is
criminally responsible, we need not address whether the evidence is sufficient
to prove that Villa is criminally responsible as a party to the offense because
the offense was committed by his own conduct.Â  See Tex. Penal Code Ann. Â§ 7.01(a).Â  We
overrule VillaÂs third and fourth issues.

In his fifth issue,
Villa contends that the jury instructions on the guilt-innocence phase of the
trial failed to require a unanimous verdict in contravention of the Texas
Constitution and Code of Criminal Procedure.Â  Villa acknowledges that he did
not object to the charge on this ground.

Because there was no
objection made to the charge by Villa, we must first determine whether the
charge as submitted to the jury was erroneous and if so, we must analyze this
complaint utilizing the standard of Almanza v. State.Â  Allen v. State,
253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing Olivas v. State, 202
S.W.3d 137, 143-44 (Tex. Crim. App. 2006) (citing Almanza v. State, 686
S.W.2d 157 (Tex. Crim. App. 1985) (op. on rehÂg)).Â  Under Almanza,
unobjected-to jury charge error will not result in reversal of a conviction in
the absence of Âegregious harm.ÂÂ  Almanza, 686 S.W.2d at 171.

Jury unanimity is
required in all criminal cases.Â  Ngo v. State, 175 S.W.3d 738, 745 (Tex.
Crim. App. 2005).Â  But while jury unanimity is required on the essential
elements of an offense, the jury generally is not required to return a unanimous
verdict on the specific method of committing a single offense.Â  Jefferson v.
State, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); see Ngo, 175
S.W.3d at 747 n.32.

The courtÂs charge
instructed the jury to find Villa guilty if he, acting alone or as a party,
either intentionally or knowingly caused RodriguezÂs death, or if with intent
to cause serious bodily injury to Rodriguez, he committed an act clearly
dangerous to human life which caused RodriguezÂs death.Â  Villa argues that
because the guilt question did not require the jury to specify which statutory
provision (i.e., section 19.02(b)(1) or section 19.02(b)(2) of the penal
code) applied, the charge failed to require a unanimous verdict. Â However,
the provisions of section 19.02(b) do not describe different offenses; rather,
they merely set forth alternative methods of committing the same offense.Â  Yost
v. State, 222 S.W.3d 865, 877 (Tex. App.ÂHouston [14th Dist.] 2007, pet.
refÂd) (citing Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim.
App. 1987) (op. on rehÂg)).Â  The charge allowed the jury to convict Villa of
only one offenseÂthe murder of Rodriguez.

VillaÂs complaint has
been soundly rejected by our sister courts.Â  See Bundy v. State, 280
S.W.3d 425, 431-33 (Tex. App.ÂFort Worth 2009, pet. refÂd); Yost, 222
S.W.3d at 877-78; see also Perez v. State, No. 12-08-00390-CR, 2010 WL
5141765, at *4-5 (Tex. App.ÂTyler Dec. 15, 2010, no pet.) (mem. op., not
designated for publication); Neal v. State, No. 08-07-00232-CR, 2010 WL
160206, at *8-9 (Tex. App.ÂEl Paso Jan. 13, 2010,Â  pet. refÂd) (not designated
for publication); Campa v. State, No. 05-07-01210-CR, 2009 WL 1887123,
at *7 (Tex. App.ÂDallas Jul. 2, 2009, pet. refÂd) (not designated for
publication); Williams v. State, No. 03-05-00460-CR, 2008 WL 744710, at
*5 (Tex. App.ÂAustin Mar. 21, 2008, no pet.) (mem. op., not designated for
publication).Â  We likewise conclude that the jury charge in this case did not
permit the jury to reach a less than unanimous verdict.Â  The fact that the jury
could have decided between two possible means of committing the same offense
does not present error.Â  We overrule VillaÂs fifth issue.

In his first issue,
Villa contends that the trial court erred in denying his motion for new trial.Â 
Villa
filed a motion for new trial, claiming that Âthe testimony at trial raised the
issue of sudden passion and defense counsel was ineffective for failing to
request a charge on the issue at the punishment phase of trial and fully
develop and argue the issue.ÂÂ  The trial court denied the motion for new trial
without a hearing. Â 

We review the trial court's ruling on a
motion for new trial under an abuse of discretion standard. Â Webb v. State,
232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Â In conducting our review, we view
the evidence in the light most favorable to the trial court's ruling and uphold
the ruling if it is within the zone of reasonable disagreement. Id.

To prevail on an ineffective assistance
of counsel claim, the familiar Strickland v. Washington test must be
met.Â  Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156
L.Ed.2d 471 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); Andrews v. State, 159
S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same).Â  Under Strickland, the
appellant must prove by a preponderance of the evidence that (1) counselÂs
performance was deficient, and (2) the defense was prejudiced by counselÂs
deficient performance.Â  Wiggins, 539 U.S. at 521, 123 S.Ct. at 2535; Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Andrews, 159 S.W.3d at 101.Â  Absent both showings, an appellate
court cannot conclude the conviction resulted from a breakdown in the
adversarial process that renders the result unreliable.Â  Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When evidence from any source raises a
defensive issue, and the defendant properly requests a jury charge on that
issue, the trial court must submit the issue to the jury.Â  Muniz v. State,
851 S.W.2d 238, 254 (Tex. Crim. App. 1993).Â  The evidence raising such an issue
may be Âstrong, weak, contradicted, unimpeached, or unbelievable.ÂÂ  Id.Â  The
defendantÂs testimony by itself is sufficient to raise a defensive issue
requiring an instruction in the jury charge.Â  Stefanoff v. State, 78
S.W.3d 496, 499-500 (Tex. App.ÂAustin 2002, pet. refÂd) (citing Hayes v.
State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987)).Â  When the evidence
fails to raise a defensive issue, the trial court commits no error in refusing
a requested instruction.Â  Id. Â It follows, then, that counsel would not
have been ineffective for failing to request an instruction when the evidence
fails to raise a defensive issue.

Section 19.02(d) of the
penal code states:Â  Â

o request
a charge on the issue of sudden passion)ithout a hearing.

d an
evidentiary hearing and hear testimony from witnAt the punishment stage
of a trial, the defendant may raise the issue as to whether he caused the death
under the immediate influence of sudden passion arising from an adequate cause.ÂÂ 
Tex. Penal Code Ann. Â§ 19.02(d).Â 
The analysis of whether the issue of sudden passion has been raised divides
into two inquiries.Â  First, the record must show some evidence of Âadequate
causeÂÂÂcause that would commonly produce a degree of anger, rage, resentment,
or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection.ÂÂ  Id. Â§ 19.02(a)(1).Â  Second, the record
must show some evidence of Âsudden passionÂÂÂpassion directly caused by and
arising out of provocation by the individual killed or another acting with the
person killed which passion arises at the time of the offense and is not solely
the result of former provocation.ÂÂ  Id. Â§ 19.02(a)(2).

ÂSudden passionÂ
requires first that the record contain objective evidence that direct provocation
by the victim or someone acting with the victim occurred at the time of the
killing.Â  See Merchant v. State, 810 S.W.2d 305, 310 (Tex. App.ÂDallas
1991, pet. refÂd).Â  Evidence of prior provocation alone is not enough.Â  See id.Â 
Second, the record must also contain evidence from which the jury could
subjectively decide the accused killed the victim while in an excited and
agitated state of mind arising out of the direct provocation.Â  See id.Â 
There must be evidence that the accused acted in the throes of actual,
subjective passion.Â  See id.

Villa testified in the
punishment phase that he and Rodriguez had a history with one another.Â 
Rodriguez and his brother thought that Villa had taken some drugs from
RodriguezÂs brother.Â  Thus, Villa suspected that Rodriguez was involved when,
on a prior occasion, VillaÂs car had been shot at in front of RodriguezÂs
house.Â  Because of this shooting, Villa also suspected Rodriguez of shooting at
his house about six days before the incident at the convenience store.Â  VillaÂs
mother, father, and one-year-old nephew were in the room that the bullets had
gone through, but none of them had been injured.Â  Soon after that, GarciaÂs
father was killed in a shooting at GarciaÂs house, and Villa had gone to his
funeral the same day as the incident at the convenience store.

When Villa saw
Rodriguez at the convenience store, he wanted to ask him who had shot at his
house.Â  Villa stated that if he had known for sure that Rodriguez had shot at
his house, he would have started fighting him immediately when he saw him.Â  But
Villa stated, ÂI wasnÂt sure.Â  So I was going to ask him.Â  You
know, I wasnÂt going to -- you know, I wasnÂt going to come at the wrong
person.ÂÂ  Villa confronted Rodriguez and asked Rodriguez who had shot at his
house.Â  Rodriguez smiled.Â  Villa stated that it made him Âangry or somethingÂ
and mad, like Rodriguez was Âdisrespecting me all the way.ÂÂ  Villa said that
after Rodriguez smiled, Villa wanted to fight him and Âpretty much knew that,
yeah, we were probably going to end up having a fight.Â

Garcia hit Rodriguez
first, and Villa and Rodriguez then started fighting.Â  Villa said that he did
not want to kill Rodriguez or cause him serious bodily injury; he just wanted
to fight Rodriguez.Â  Villa testified that he did not have a gun, and he did not
know that Garcia was going to have or use a gun.Â  Villa first saw GarciaÂs gun
when he brought it out and hit Rodriguez with it.

We conclude that there
is no evidence from which a jury could reasonably find that Villa caused RodriguezÂs
death under the influence of sudden passion.Â  VillaÂs testimony shows that his
alleged passion did not arise at the time of the offense; rather, it was solely
the result of former provocation.Â  See, e.g., Hobson v. State,
644 S.W.2d 473, 478 (Tex. Crim. App. 1983).Â  Villa admitted that if he had
known for sure that Rodriguez had shot at his house, he would have started
fighting him immediately when he saw him.Â  Villa stated that he asked Rodriguez
who had shot at his house just to make sure he did not Âcome at the wrong
person.ÂÂ  Furthermore, VillaÂs testimony indicates that his actions
were the result of cool reflection and not sudden passion.Â  Villa stated that
after Rodriguez smiled, he Âpretty much knew that, yeah, we were probably
going to end up having a fight.ÂÂ  [Emphasis added.]Â  Villa then waited until
after Garcia hit Rodriguez first to start fighting with him.

Thus, the evidence does
not raise the issue as to whether Villa caused RodriguezÂs death under the
immediate influence of sudden passion arising from an adequate cause.Â  See Tex. Penal Code Ann. Â§ 19.02(d).Â  Accordingly,
Villa has not shown that trial counselÂs performance was deficient for
not requesting a charge on the issue at the punishment phase.Â  See
Stefanoff, 78
S.W.3d at 499-500.Â  Because Villa cannot prove the first prong
of the Strickland test, he cannot prevail on his ineffective assistance
of counsel claim, and we need not address the second prong of the Strickland
test.Â  See Strickland, 466 U.S. at
697, 104 S.Ct. at 2069.Â  Furthermore, because Villa cannot prevail on his
ineffective assistance of counsel claim, the trial court did not abuse its
discretion in denying his motion for new trial. Â See Webb, 232
S.W.3d at 112. Â We overrule VillaÂs first issue.

In his second issue,
Villa contends that the trial court erred in refusing to hold a hearing on his
motion for new trial. Â When examining a trial courtÂs denial of a
hearing on a motion for new trial, we review for an abuse of discretion.Â  Smith
v. State, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).Â  The trial court
abuses its discretion in failing to hold a hearing if the motion and
accompanying affidavits (1) raise matters which are not determinable from the
record and (2) establish reasonable grounds showing that the defendant could
potentially be entitled to relief.Â  Hobbs v. State, 298 S.W.3d 193, 199
(Tex. Crim. App. 2009).Â  Because we already determined above that Villa cannot
prevail on his ineffective assistance of counsel claim, we conclude that the
trial court did not abuse its discretion in refusing to hold a hearing on
VillaÂs motion for new trial.Â  We overrule his second issue.

Having overruled all of
VillaÂs issues, we affirm the trial courtÂs judgment.

Â 

REX D. DAVIS

Justice

Â 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion
delivered and filed May 18, 2011 

Do
not publish

[CRPM]