

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00385-CR

**FREDERICK VILLA,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2005-1597-C2**

## MEMORANDUM  OPINION

A jury found Frederick Villa guilty of the offense of murder and assessed his punishment at thirty-five years' imprisonment.  In five issues, Villa appeals.  We will affirm.

We begin with Villa's third and fourth issues in which he contends that the evidence is legally and factually insufficient to support his conviction.

The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis*

factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Accordingly, we will apply the same standard of review to both of Villa's sufficiency complaints.

When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The evidence, viewed in the light most favorable to the verdict, is as follows: At around 10:20 p.m. on September 13, 2005, Steven Gronowski drove himself and his cousin, Bobby Rodriguez, to a convenience store in Waco. Upon arrival at the store, Rodriguez went inside to buy a few things while Gronowski stayed in the car. Villa and Carlos Garcia then pulled up at the gas pumps in another car and went into the store. While Rodriguez was paying at the counter, Villa and Garcia whispered to one another

at the side of the counter. Rodriguez then exited the store. Villa and Garcia followed him after Villa quickly left $15 on the counter to pay for gas.

Villa and Garcia confronted Rodriguez outside the passenger side door of Gronowski's car. Villa and Garcia began arguing with Rodriguez and then started fighting with him. Garcia hit Rodriguez first and then Villa began fist-fighting with him. Garcia pulled out a gun and began hitting Rodriguez with it. While he was hitting him with the gun, Garcia missed Rodriguez and hit the roof of Gronowski's car. The gun slipped out of Garcia's hand and flew across the parking lot. When Gronowski saw this, he started to get out of his car, but before he was even able to completely step out of his car, Garcia retrieved the gun. Garcia put the clip back in the gun, cocked it, and then pointed the gun at Gronowski and told him not to do anything stupid or he would kill him. Garcia then ran back to where Rodriguez was.

In the meantime, Villa and Rodriguez had continued fighting. Gronowski testified that Villa also had a gun. Rodriguez hit Villa hard and knocked him back. Villa then tackled Rodriguez and knocked him to the ground. As Rodriguez was trying to get up off the ground, Garcia ran over and kicked his elbow out from underneath him. Rodriguez fell and hit the bumper of the car with the back of his head. Garcia then swung the gun and hit Rodriguez in the head and a shot rang out. Villa and Garcia then ran to their car and left. Rodriguez died approximately two days later.

Dr. Ted Smith, the primary physician who treated Rodriguez, determined that the cause of Rodriguez's death was blunt trauma to the brain. Dr. Smith testified that Rodriguez had a scalp wound that he felt was due to a bullet but that the bullet did not

actually enter Rodriguez's skull; rather, it "skied along the outside of the skull through the scalp." People who suffer this type of injury are usually not killed. However, Rodriguez also had a fracture of the skull extending from the top of the skull down toward both ears. Dr. Smith's opinion was that the skull fracture was caused by being struck in the head by a blunt object, not a gunshot. The blunt object could have been a pistol, or the injuries could have been sustained if Rodriguez's head bounced off a car or the sidewalk when he was forced to the ground. However, the trauma to the brain could not have been sustained solely from a beating with fists because usually the bones of the hand will break before the skull will break.

Dr. Lynn Salzberger, the medical examiner who conducted an autopsy on Rodriguez, testified that Rodriguez's manner of death was homicide. Most of Rodriguez's injuries were located on his head. The main injury was an injury on the top of his head that involved a skull fracture and some swelling, bruising, and tearing of the brain immediately beneath the skull fracture. She was uncertain whether the injury was a blunt force injury or a gunshot wound injury. She explained that all of the landmarks that she typically looks at as a forensic pathologist to determine whether the injury is a blunt force injury or a gunshot wound injury were gone because the surgeons had worked on Rodriguez and there was also some healing that had occurred.

The court's charge included an instruction on the law of parties and the application paragraph applied the law of parties to the facts of this case.

A person is guilty of murder, as charged in this case, if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily

injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A person is criminally responsible as a party to the offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id.* § 7.01(a) (Vernon 2003). A person is criminally responsible for the offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (Vernon 2003).

Villa argues that the evidence is insufficient to support his conviction because there is no evidence that he used a gun to hit or shoot Rodriguez and because there is a "lack of evidence that Appellant had the culpability required in a murder charge, or that he did anything to promote or assist the use of the gun and the causing of Rodriguez's death by Garcia."

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). In determining whether a defendant participated in an offense as a party, the fact-finder may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Frank v. State*, 183 S.W.3d 63, 73 (Tex. App.—Fort Worth 2005, pet. ref'd).

A rational trier of fact could have found that Villa was aware that a gun was going to be used in the commission of the offense. Gronowski testified that both Garcia

and Villa had guns. Furthermore, a rational trier of fact could have found that, even if Villa did not know before the attack that Garcia intended to use a gun, it became obvious to him during the attack that Garcia did have such an intent, yet he continued to participate in the attack. *See Crutcher v. State*, 969 S.W.2d 543, 546-47 (Tex. App.— Texarkana 1998, pet. ref'd). Thus, a rational trier of fact could have found that Villa, as a party, intentionally or knowingly caused Rodriguez's death or, with intent to cause serious bodily injury to Rodriguez, committed an act clearly dangerous to human life that caused Rodriguez's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2); *Jackson,* 443 U.S. at 318-19, 99 S.Ct. at 2789.

Having decided that the evidence is sufficient to prove that Villa is criminally responsible as a party to the offense because the offense was committed by another for which he is criminally responsible, we need not address whether the evidence is sufficient to prove that Villa is criminally responsible as a party to the offense because the offense was committed by his own conduct. *See* TEX. PENAL CODE ANN. § 7.01(a). We overrule Villa's third and fourth issues.

In his fifth issue, Villa contends that the jury instructions on the guilt-innocence phase of the trial failed to require a unanimous verdict in contravention of the Texas Constitution and Code of Criminal Procedure. Villa acknowledges that he did not object to the charge on this ground.

Because there was no objection made to the charge by Villa, we must first determine whether the charge as submitted to the jury was erroneous and if so, we must analyze this complaint utilizing the standard of *Almanza v. State*. *Allen v. State*, 253

S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza*, 686 S.W.2d at 171.

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). But while jury unanimity is required on the essential elements of an offense, the jury generally is not required to return a unanimous verdict on the specific method of committing a single offense. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *see Ngo*, 175 S.W.3d at 747 n.32.

The court's charge instructed the jury to find Villa guilty if he, acting alone or as a party, either intentionally or knowingly caused Rodriguez's death, or if with intent to cause serious bodily injury to Rodriguez, he committed an act clearly dangerous to human life which caused Rodriguez's death. Villa argues that because the guilt question did not require the jury to specify which statutory provision (*i.e.*, section 19.02(b)(1) or section 19.02(b)(2) of the penal code) applied, the charge failed to require a unanimous verdict. However, the provisions of section 19.02(b) do not describe different offenses; rather, they merely set forth alternative methods of committing the same offense. *Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g)). The charge allowed the jury to convict Villa of only one offense—the murder of Rodriguez.

Villa's complaint has been soundly rejected by our sister courts. *See Bundy v. State*, 280 S.W.3d 425, 431-33 (Tex. App.—Fort Worth 2009, pet. ref'd); *Yost*, 222 S.W.3d at 877-78; *see also Perez v. State*, No. 12-08-00390-CR, 2010 WL 5141765, at *4-5 (Tex. App.—Tyler Dec. 15, 2010, no pet.) (mem. op., not designated for publication); *Neal v. State*, No. 08-07-00232-CR, 2010 WL 160206, at *8-9 (Tex. App.—El Paso Jan. 13, 2010, pet. ref'd) (not designated for publication); *Campa v. State*, No. 05-07-01210-CR, 2009 WL 1887123, at *7 (Tex. App.—Dallas Jul. 2, 2009, pet. ref'd) (not designated for publication); *Williams v. State*, No. 03-05-00460-CR, 2008 WL 744710, at *5 (Tex. App.—Austin Mar. 21, 2008, no pet.) (mem. op., not designated for publication). We likewise conclude that the jury charge in this case did not permit the jury to reach a less than unanimous verdict. The fact that the jury could have decided between two possible means of committing the same offense does not present error. We overrule Villa's fifth issue.

In his first issue, Villa contends that the trial court erred in denying his motion for new trial. Villa filed a motion for new trial, claiming that "the testimony at trial raised the issue of sudden passion and defense counsel was ineffective for failing to request a charge on the issue at the punishment phase of trial and fully develop and argue the issue." The trial court denied the motion for new trial without a hearing.

We review the trial court's ruling on a motion for new trial under an abuse of discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). In conducting our review, we view the evidence in the light most favorable to the trial

court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Id.*

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). The evidence raising such an issue may be "strong, weak, contradicted, unimpeached, or unbelievable." *Id.* The defendant's testimony by itself is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Stefanoff v. State*, 78 S.W.3d 496, 499-500 (Tex. App.—Austin 2002, pet. ref'd) (citing *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987)). When the evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *Id.* It follows, then, that counsel would not

have been ineffective for failing to request an instruction when the evidence fails to raise a defensive issue.

Section 19.02(d) of the penal code states: "At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). The analysis of whether the issue of sudden passion has been raised divides into two inquiries. First, the record must show some evidence of "adequate cause"— "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). Second, the record must show some evidence of "sudden passion"— "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2).

"Sudden passion" requires first that the record contain objective evidence that direct provocation by the victim or someone acting with the victim occurred at the time of the killing. *See Merchant v. State*, 810 S.W.2d 305, 310 (Tex. App.—Dallas 1991, pet. ref'd). Evidence of prior provocation alone is not enough. *See id.* Second, the record must also contain evidence from which the jury could subjectively decide the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. *See id.* There must be evidence that the accused acted in the throes of actual, subjective passion. *See id.*

Villa testified in the punishment phase that he and Rodriguez had a history with one another. Rodriguez and his brother thought that Villa had taken some drugs from Rodriguez's brother. Thus, Villa suspected that Rodriguez was involved when, on a prior occasion, Villa's car had been shot at in front of Rodriguez's house. Because of this shooting, Villa also suspected Rodriguez of shooting at his house about six days before the incident at the convenience store. Villa's mother, father, and one-year-old nephew were in the room that the bullets had gone through, but none of them had been injured. Soon after that, Garcia's father was killed in a shooting at Garcia's house, and Villa had gone to his funeral the same day as the incident at the convenience store.

When Villa saw Rodriguez at the convenience store, he wanted to ask him who had shot at his house. Villa stated that if he had known for sure that Rodriguez had shot at his house, he would have started fighting him immediately when he saw him. But Villa stated, "I wasn't sure. So I was going to ask him. You know, I wasn't going to -- you know, I wasn't going to come at the wrong person." Villa confronted Rodriguez and asked Rodriguez who had shot at his house. Rodriguez smiled. Villa stated that it made him "angry or something" and mad, like Rodriguez was "disrespecting me all the way." Villa said that after Rodriguez smiled, Villa wanted to fight him and "pretty much knew that, yeah, we were probably going to end up having a fight."

Garcia hit Rodriguez first, and Villa and Rodriguez then started fighting. Villa said that he did not want to kill Rodriguez or cause him serious bodily injury; he just wanted to fight Rodriguez. Villa testified that he did not have a gun, and he did not

know that Garcia was going to have or use a gun. Villa first saw Garcia's gun when he brought it out and hit Rodriguez with it.

We conclude that there is no evidence from which a jury could reasonably find that Villa caused Rodriguez's death under the influence of sudden passion. Villa's testimony shows that his alleged passion did not arise at the time of the offense; rather, it was solely the result of former provocation. *See, e.g.*, *Hobson v. State*, 644 S.W.2d 473, 478 (Tex. Crim. App. 1983). Villa admitted that if he had known for sure that Rodriguez had shot at his house, he would have started fighting him immediately when he saw him. Villa stated that he asked Rodriguez who had shot at his house just to make sure he did not "come at the wrong person." Furthermore, Villa's testimony indicates that his actions were the result of cool reflection and not sudden passion. Villa stated that after Rodriguez smiled, he "pretty much knew that, yeah, we were *probably* going to end up having a fight." [Emphasis added.] Villa then waited until after Garcia hit Rodriguez first to start fighting with him.

Thus, the evidence does not raise the issue as to whether Villa caused Rodriguez's death under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE ANN. § 19.02(d). Accordingly, Villa has not shown that trial counsel's performance was deficient for not requesting a charge on the issue at the punishment phase. *See Stefanoff*, 78 S.W.3d at 499-500. Because Villa cannot prove the first prong of the *Strickland* test, he cannot prevail on his ineffective assistance of counsel claim, and we need not address the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. Furthermore, because Villa cannot prevail

on his ineffective assistance of counsel claim, the trial court did not abuse its discretion in denying his motion for new trial. *See Webb,* 232 S.W.3d at 112. We overrule Villa's first issue.

In his second issue, Villa contends that the trial court erred in refusing to hold a hearing on his motion for new trial. When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Because we already determined above that Villa cannot prevail on his ineffective assistance of counsel claim, we conclude that the trial court did not abuse its discretion in refusing to hold a hearing on Villa's motion for new trial. We overrule his second issue.

Having overruled all of Villa's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed May 18, 2011
Do not publish
[CRPM]