Nicolena **MEDLOCK**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 56067, 56068.

Court of Criminal Appeals of Texas,
Panel No. 3.

Oct. 31, 1979.

Rehearing En Banc Denied Jan. 9, 1980.

Malcolm Dade, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Steve Wilensky, Bob Whaley & Daniel P. Garrigan, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, CLINTON and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

These are appeals from two convictions for murder which were tried together in a single proceeding. The trial was before a jury, and the appellant received two sentences of life imprisonment.

The appellant was convicted for shooting her husband, Lee Arthur Medlock, and Yvett Harris, a waitress at the club where the shooting occurred. The record reflects that on the evening of February 6, 1975, the appellant left church after choir practice to meet her son and daughter-in-law at Mr. B's, a private club. The appellant was sitting at a table with the club manager and her daughter-in-law, when Medlock, the deceased, walked into the club. Witnesses for the State and the defense testified that the deceased stood by the cigarette machine, staring at the appellant. After 30 to 45 minutes, the deceased approached the table and said to the appellant, "You left the damn money for me. But it wasn't enough. And I don't want it." The appellant responded, "Okay . . . I know that. Now please don't bother me. Because I don't know all these folks in here. Just don't want to start anything." The deceased returned to the cigarette machine and continued to stare at the appellant. The appellant testified that she became frightened and began to tremble.

Wandalyn Cooper, the appellant's daughter-in-law, testified that approximately thirty minutes later, the deceased came over and grabbed the appellant by the neck and said, "Let's go. I'm going to get you." Cooper testified that she was terrified by the deceased's behavior. The appellant testified that the deceased reached for her and she pulled away. She testified, "He was coming after me, and I started shooting . . . He said, 'I'm going to get you' . . . I was scared. I didn't have nowhere to run . . . He was going to get me . . . It was my life or Medlock's." The appellant testified that she had been carrying the gun for protection since two rapes and a burglary had been committed near her home.

The appellant fired the gun three times; Yvett Harris was hit once and Lee Arthur Medlock was hit twice.

In her first ground of error, the appellant contends that the trial court erred in failing to charge the jury on the lesser included offense of voluntary manslaughter, as requested. The trial court charged the jury on the offense of murder under V.T.C.A. Penal Code, Sec. 19.02, and also charged the jury on self-defense.

It is well established that where the evidence raises the issue of voluntary manslaughter, and the charge is properly requested, the court is required to submit the issue in its charge. *Ray v. State*, 515 S.W.2d 664 (Tex.Cr.App.1974); *Armentrout v. State*, 515 S.W.2d 297 (Tex.Cr.App.1974); *Monroe v. State*, 501 S.W.2d 639 (Tex.Cr.App.1973). The testimony of the accused alone is sufficient to raise the issue. *Ray, supra; Mays v. State*, 513 S.W.2d 846 (Tex.Cr.App.1974). In *Gonzales v. State*, 546 S.W.2d 617, 618 (Tex.Cr.App.1977), we stated,

"It is immaterial if the theory of voluntary manslaughter was raised by appellant's own testimony or if the case is doubtful. As was the rule in murder without malice cases under Article 1257c of the former Penal Code, once the issue is raised by the evidence, the trial court, without determining the weight or the truth or falsity of the testimony, is bound

to submit the issue for determination by the jury."

Furthermore, the fact that the evidence raises the issue of self-defense does not deprive the accused the right to an instruction on voluntary manslaughter. *Ray, supra; Monroe, supra.*

Voluntary manslaughter is defined in V.T.C.A. Penal Code, Sec. 19.04 as:

"(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

"(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

"(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

The evidence presented during the trial revealed that the Medlocks had a volatile marriage in the years preceding the shooting. The appellant had filed for divorce twice and she testified that her husband threatened to kill her if she saw an attorney about a divorce again. Other defense witnesses testified that they had heard the deceased threaten to kill the appellant. The appellant testified that she so feared for her life, that she refused to permit her doctor to release her medical records, so that a life insurance policy could not be issued on her life.

Additional testimony revealed that the deceased owned two guns, one of which he kept with him. The appellant testified that he came after her with a pistol on one occasion.

On cross-examination, the prosecutor asked the appellant,

"Q. Scared or not why didn't you just point the gun at him and say 'Don't move my dear husband?'

"A. When you're scared, Mr. Whaley, do you think just to do one thing, no . . . you don't know when you're scared. You cannot say I'm going to point this over here, no, no. Life is involved, and my life was involved.

\* \* \* \* \* \*

"Q. What was it that scared you?

"A. The fact that he was going to kill me.

"Q. This night what did he say?

"A. 'I'm going to get you. I'm going to kill you. I'm going to kill you. I'm going to get you.' And he was after me."

We find that sufficient evidence was presented in this case to raise the issue that the appellant may have acted under the immediate influence of sudden passion. The trial court erred, therefore, in denying the appellant's requested charge on voluntary manslaughter.

The judgment of conviction for the killing of Lee Arthur Medlock is reversed and remanded.

The judgment of conviction for the killing of Yvett Harris is also reversed, as the charge given the jury in this case made a finding of guilty contingent on the finding that appellant murdered Lee Medlock.

Both judgments are reversed and the causes remanded.