**Tommy Joe MERCHANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–90–00667–CR.**

Court of Appeals of Texas, Dallas.

May 29, 1991.

Richard Alan Anderson, Dallas, for appellant.

Carolyn Fitz–Gerald Levin, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and BURNETT, JJ.

## OPINION

BAKER, Justice.

A jury convicted Tommy Joe Merchant of murder. The trial court sentenced him to thirty-five years' confinement. Appellant asserts the trial court erred in not charging the jury on the lesser included offense of voluntary manslaughter. We agree. We reverse the trial court's judgment. We remand for a new trial.

### THE TESTIMONY

Two of appellant's acquaintances gave appellant a lift. One acquaintance, the passenger in the front seat of the car, testified for the State. He said appellant sat in the back seat. Without warning or provocation, appellant reached over the front seat and stabbed the passenger with a knife. Neither of the two men in the front seat had a knife. The driver fought with appellant over the knife. During the struggle the driver's foot pressed the accelerator. The car careened off the road and hit a tree. The fighting stopped. The three men got out of the car. The driver and the passenger ran away across a nearby field. The driver collapsed in the field. The passenger went home.

Appellant testified at the guilt-innocence stage. He agreed the two acquaintances gave him a ride home. He said the driver stopped the car about two blocks from appellant's house. The driver told appellant to get out of the car and purchase some cocaine. They argued about money the driver claimed appellant owed him for the crack they had smoked together. The passenger turned around in the front seat and demanded appellant's money. Appellant refused. The driver reached around and grabbed appellant by the throat. The car lurched forward. The passenger began to punch appellant in the face. Appellant tried to get out of the car but could not unlock the car door. Appellant testified:

Q. [by defense counsel] What happened next?

A. Then at that point I pulled the knife out of my sheath.

Q. Why?

A. To more or less scare them and maybe I could get out of the car.

Q. Did you stab them at that point?

A. At that point my knife was out of my sheath and I had the blade open and we were fighting and swinging. I don't know if I stabbed them or not.

\* \* \* \* \* \*

Q. Did you think that you had done something wrong out there on Clearfield?

A. I really couldn't—I really didn't know if I did anything wrong or not besides trying to fight for my life. I don't know if I killed the man or not.

Appellant said he struggled with the two men after the car hit the tree. The fight continued when they got out of the car. The driver picked up a board laying on the ground and swung it at appellant. The driver dropped the board. Appellant picked it up and swung it at the driver. The other two men broke away and ran across a field. Appellant did not know he had stabbed the driver until he went up to

him after the driver fell. On cross-examination, appellant testified:

Q. Of course you pulled that knife out to scare them off; is that correct?

A. That is correct.

Q. Because you were in fear for your life, right?

A. That is correct.

Q. And you don't know how [the driver] got stabbed, do you?

A. No, I don't.

Q. You don't know how [the passenger] got stabbed, either, do you?

A. No, I don't.

Residents of the neighborhood where the incident occurred testified. They said the car had come to a stop in front of one of the houses on the street. The residents saw the three men struggle in the car. The car pulled forward slowly, then accelerated rapidly. It jumped a curb and crashed into a tree. The three men got out of the car. The fight continued. Two of the men struggled over a board one of the men had picked up. Two of them broke away and ran across a field. One man fell. The other disappeared. The third man walked over to the fallen man. He then came back to the car. One of the residents said the man who came back to the car was the aggressor.

The driver died. The State indicted appellant for murder. The trial court submitted appellant's requested jury charge on self-defense. It refused to submit his requested charge on the lesser included offense of voluntary manslaughter.

## THE VOLUNTARY MANSLAUGHTER STATUTE

Section 19.04 defines voluntary manslaughter:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(d) An offense under this section is a felony of the second degree.

TEX.PENAL CODE ANN. § 19.04 (Vernon 1989).

The definitions in section 19.04 are both objective and subjective. *Zimmerman v. State*, 85 Tex.Crim. 630, 215 S.W. 101, 104 (1919). Section 19.04(c) requires an objective analysis because the jury must determine if the evidence shows adequate cause by viewing the alleged cause through the eyes of the ordinary person. It is subjective because the jury must view the alleged cause from the accused's standpoint to determine "the condition of the mind of the accused at the time of the offense." TEX. PENAL CODE ANN. § 19.06 (Vernon 1989); *see* Searcy & Patterson, Practice Commentary, TEX.PENAL CODE ANN. § 19.05 (Vernon 1989). Similarly, section 19.04(b) requires first an objective analysis to determine if a provocation occurred at the time of the killing. It is subjective because the jury must then determine if the accused acted in passion arising out of the provocation.

As the Practice Commentary notes, section 19.04 is a blend of the old and the new. The statute combines the 1856 Penal Code definition of voluntary manslaughter with the "murder without malice" of former article 1257c of the 1927 Murder Act. *See* Act of August 28, 1856, 6th Leg., PENAL CODE arts. 594 to 597 (Paschal 1873); *see also* Act of June 9, 1927, 40th Leg., 1st C.S., ch. 8, § 3–a, 1927 TEX.GEN.LAWS, 18, 18, 25 H. GAMMEL, LAWS OF TEXAS (1927). Cases decided under these earlier provisions are instructive in deciding the case before us. *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Crim.App.1976).

## STANDARD OF REVIEW

### 1. Lesser Included Offense

■ We apply a two-prong test in determining whether a trial court must charge the jury on a lesser included offense: (1) proof of the charged offense includes proof of the lesser included offense; and (2) the record contains some evidence that the defendant, if guilty, is guilty only of the lesser included offense. *Havard v. State,* 800 S.W.2d 195, 215–16 (Tex.Crim.App. 1989) (op. on reh'g); *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985).

### a. Voluntary Manslaughter

### Is a Lesser Included Offense of Murder

■ Voluntary manslaughter is a death caused under the immediate influence of sudden passion arising from adequate cause. It is a lesser included offense of murder. *Sattiewhite v. State,* 786 S.W.2d 271, 287 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). Appellant satisfies the first prong of the *Aguilar* test.

### b. Evidence in the Record

■ In deciding whether a defendant raises the issue of a lesser included offense, we look to all the evidence presented at trial. We do not look solely to whether the defendant's testimony raises or negates the issue of the lesser included offense. *Lugo v. State,* 667 S.W.2d 144, 147 (Tex.Crim.App.1984). We may not consider the credibility of the evidence. We may not consider whether any testimony conflicts with or controverts the evidence. *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim. App.1987). It is solely the jury's duty, under proper instruction, to determine whether the evidence is credible and supports a finding that appellant committed the lesser included offense. *Hayes v. State,* 728 S.W.2d 804, 809 (Tex.Crim.App. 1987). The jury may selectively believe evidence at trial presented by the State and the defendant. The jury may accept or reject all or a part of any witness's testimony, including that of the defendant. *Havard,* 800 S.W.2d at 216.

■ The testimony of the accused alone can raise voluntary manslaughter. *Medlock v. State,* 591 S.W.2d 485, 486 (Tex. Crim.App. [Panel Op.] 1979); *Payne v. State,* 668 S.W.2d 495, 497 (Tex.App.—Austin 1984, no pet.). Testimony raising self-defense does not always raise voluntary manslaughter. *Luck v. State,* 588 S.W.2d 371, 374–75 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). Nor does evidence that raises self-defense deprive the accused of the right to an instruction on voluntary manslaughter. *Medlock,* 591 S.W.2d at 485.

### 2. Voluntary Manslaughter

■ To require a charge on voluntary manslaughter, the record must contain some evidence that the accused acted "under the immediate influence of sudden passion arising from an adequate cause." *Cerda v. State,* 557 S.W.2d 954, 958 (Tex. Crim.App.1977). The analysis divides into two inquiries. *Brunson v. State,* 764 S.W.2d 888, 894 (Tex.App.—Austin 1989, pet. ref'd). First, the record must show some evidence of "adequate cause"—cause which would produce anger, rage, resentment, or terror in a person of ordinary temper so that the person is incapable of cool reflection. *Brunson,* 764 S.W.2d at 894. Second, the record must show some evidence of "sudden passion"—an excited and agitated state of mind at the time of the killing caused by direct provocation by the victim or someone acting with the victim. *Brunson,* 764 S.W.2d at 894; *see Hobson v. State,* 644 S.W.2d 473, 478 n. 10 (Tex.Crim.App.1983); *see also Elsmore v. State,* 132 Tex.Crim. 261, 104 S.W.2d 493, 495 (1937).

Section 19.04 creates a variety of situations in which the evidence would not require a charge on voluntary manslaughter. The record could show no evidence of cause. It could show no evidence of provocative conduct, or at least none at the time of the killing. There could be evidence of a cause which could produce anger, rage, resentment, or terror adequate to make an ordinary person incapable of

cool reflection, but no evidence that the accused acted in an excited and agitated state of mind at the time of the killing. There could be evidence of provocation, and that the accused acted in an excited and agitated state of mind at the time of the killing, but no evidence that the cause would make a person of ordinary temper incapable of cool reflection. None of these situations would require a voluntary manslaughter submission. However, the trial court must submit the charge if there is evidence of: (1) legally adequate cause which would produce anger, rage, resentment, or terror sufficient to make an ordinary person incapable of cool reflection; and (2) the accused's excited and agitated state of mind arising out of provocation by the victim or someone acting with the victim at the time of the killing. *Brunson,* 764 S.W.2d at 894.

### a. "Adequate Cause"

The objective inquiry in section 19.04(c) has two parts. First, the record must contain evidence of legally adequate cause. The act of a victim in response to a criminal episode started by the accused is not legally adequate cause. *Harris v. State,* 784 S.W.2d 5, 10 (Tex.Crim.App. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). Second, the cause must be the kind that would produce anger, rage, resentment, or terror in a person of ordinary temper so the person is incapable of cool reflection. Evidence of a cause which produced one of the listed responses in the accused because of the accused's susceptibilities is not enough unless the cause would also produce the response in an ordinary person. *Gonzales v. State,* 689 S.W.2d 900, 903 (Tex.Crim.App. 1985). The section 19.06 subjective analysis requires some evidence of the condition of the accused's mind at the time of the offense. *See* Tex.Penal Code Ann. § 19.06 (Vernon 1989). Evidence of the accused's fear is not enough unless the cause of the

accused's fear could produce fear that rises to a level of terror which makes a person of ordinary temper incapable of cool reflection. *Daniels v. State,* 645 S.W.2d 459, 460 (Tex.Crim.App.1983).

### b. "Sudden Passion"

The "sudden passion" [1] defined by Section 19.04(b) requires first that the record contain objective evidence that direct provocation by the victim or someone acting with the victim occurred at the time of the killing. *See, e.g., Brunson,* 764 S.W.2d at 894. Evidence of prior provocation alone is not enough. *See, e.g., Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Crim. App.1983). Evidence of provocation by someone other than the victim or someone acting in concert with the victim is not enough. *Marquez v. State,* 725 S.W.2d 217, 224 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Second, the record must also contain evidence from which the jury could subjectively decide the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. There must be evidence that the accused acted in the throes of actual, subjective passion. *Lopez v. State,* 716 S.W.2d 127, 129 (Tex.App.—El Paso 1986, no pet.). An accused does not raise the issue of voluntary manslaughter merely by stating that at the moment of acting in self-defense the accused feared the victim. In such circumstances a bare claim of "fear" does not show "sudden passion arising from adequate cause." *Daniels,* 645 S.W.2d at 460.

### APPLICATION OF STANDARD OF REVIEW TO FACTS

We now consider the second prong of the *Aguilar* test. We determine whether the evidence raised the issue that appellant was guilty only of voluntary manslaughter and entitled appellant to a corre-

---

**1.** We observe some courts have used "sudden passion" as shorthand for the entire set of circumstances described by section 19.04 ("immediate influence of sudden passion arising from adequate cause"), not just the definition contained in section 19.04(b). *See, e.g., Ruiz v. State,* 753 S.W.2d 681, 683 n. 3 (Tex.Crim.App. 1988). We use the term here to describe the two-fold inquiry required by section 19.04(b).

sponding jury charge. *Aguilar,* 682 S.W.2d at 558; *Havard,* 800 S.W.2d at 215–16.

### 1. "Adequate Cause"

Appellant testified the driver and passenger assaulted and tried to rob him. If believed, this evidence is enough for the jury to have objectively found legally adequate cause. The jury could have found assault and attempted robbery to be causes that could produce anger, rage, resentment, or terror in a person of ordinary temper which would make the person incapable of cool reflection. We find evidence in the record on which the jury could have found adequate cause. *See Schoelman v. State,* 644 S.W.2d 727, 733 (Tex. Crim.App.1983).

### 2. "Sudden Passion"

The State contends the victim did not provoke appellant. The passenger testified the men did not provoke appellant. Appellant said one man choked him while the other struck him in the face as they tried to rob him. If believed, appellant's testimony is enough for the jury to have found that the victim provoked appellant at the time of the killing.

The State also contends appellant's testimony did not show appellant acted while in the throes of passion. It argues appellant's claim of fear does not rise to the level of sudden passion. *See Gonzales v. State,* 717 S.W.2d 355, 357 (Tex.Crim.App. 1986).[2]

We disagree with the State that *Gonzales* controls. We instead apply the reasoning recently employed by the Court of Criminal Appeals in *Havard.* The *Havard* court distinguished *Gonzales:*

In *Gonzales,* there was no testimony indicating the defendant was "emotionally aroused" at the time of the shooting or that he had cause to be aroused. On the contrary, the evidence showed appellant, after witnessing a confrontation between his friend and the victim in a bar, went to his friend's car, retrieved his pistol, waited for the victim, and then shot him after the victim came up behind him and fired a shot. This Court found the defendant's own testimony indicated he remained cool and composed throughout this confrontation. Thus, the defendant's "mental state did not call for an instruction on voluntary manslaughter." *Gonzales,* 717 S.W.2d at 357.

*Havard,* 800 S.W.2d at 217.

We agree with the State that fear alone is not enough. Evidence of an accused's fear alone does not present the objective evidence required by section 19.04(c)—legally adequate cause which would make an ordinary person so angry, enraged, resentful, or terrorized that the person is incapable of cool reflection. Nor does evidence of the accused's fear, standing alone, present the objective evidence required by section 19.04(b)—the victim or someone acting with the victim directly provoked the accused at the time of the killing. At best fear is only evidence of the subjective analyses required by sections 19.04(b) and 19.06—the accused's excited and agitated state of mind at the time of the killing.

Appellant testified he feared for his life. This evidence alone would not be enough. However, he also said he struck out at his two attackers with his knife, but did not know if he stabbed them. In line with the Court of Criminal Appeals' analysis in *Havard,* we distinguish this case from those in which the Court of Criminal Appeals

**2.** The State cites the following passage from *Gonzales:*

For a claim of fear to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection. *Daniels v. State,* 645 S.W.2d 459 (Tex.Crim.App. 1983).

*Gonzales,* 717 S.W.2d at 357. The exact quotation from *Daniels,* which the *Gonzales* court paraphrased, is as follows:

"[F]ear" that rises to the level of "terror" may constitute sudden passion when its cause is such that would commonly produce a degree of terror "sufficient to render the mind incapable of cool reflection," § 19.04(c); e.g., *Medlock v. State,* 591 S.W.2d 485 (Tex.Crim.App. 1979).

*Daniels,* 645 S.W.2d at 460. By its shorthand rendition, *Gonzales* combines the objective portion of the section 19.04(c) analysis with the subjective portion of the 19.04(b) analysis.

held a mere claim of fear did not show the existence of "sudden passion arising from an adequate cause." *Havard*, 800 S.W.2d at 217.

We find the present case more akin to *Medlock*. The *Medlock* court particularly noted the accused's testimony of her state of mind when the victim came toward her, saying he was going to get her: "I was scared. I didn't have nowhere to run.... It was my life or Medlock's." On cross-examination she testified she did not think about her actions in pointing the gun:

> Q. Scared or not why didn't you just point the gun at him and say 'Don't move my dear husband?'
> A. When you're scared, Mr. Whaley, do you think just to do one thing, no ... you don't know when you're scared. You cannot say I'm going to point this over here, no, no. Life is involved, and my life was involved.

*Medlock*, 591 S.W.2d at 487. The *Medlock* court went on to find evidence of the victim's direct provocation, combined with the accused's testimony of her fear and instinctive reaction, enough to raise "sudden passion." *Medlock*, 591 S.W.2d at 487.

Similarly, appellant testified the two men choked and struck him immediately before the killing. He testified he feared for his life. He said he did not know if he stabbed the victims or not, or how they got stabbed. If believed, the evidence showed appellant acted under the influence of passion arising from the driver's direct provocation in choking him when appellant stabbed the driver. We find evidence in the record on which the jury could have found appellant acted in "sudden passion."

3. "Immediate Influence of Sudden Passion Arising from Adequate Cause"

Appellant's testimony that the men assaulted and tried to rob him is evidence of adequate cause. The same testimony is evidence of direct provocation by the driver. Appellant's testimony that he feared for his life and that he did not know how the victims got stabbed is evidence that appellant acted in the throes of passion in response to the immediate provocation. If believed, the evidence raises the issue that appellant acted under the immediate influence of sudden passion arising from adequate cause.

Appellant also satisfies the second prong of *Aguilar*. We find the evidence raised the issue that appellant was guilty only of voluntary manslaughter. The evidence entitled appellant to a corresponding jury charge. *Aguilar*, 682 S.W.2d at 558. We hold the trial court erred in refusing to charge the jury on voluntary manslaughter. *Havard*, 800 S.W.2d at 217.

## HARM ANALYSIS

██ Appellant preserved the charging error. We must determine whether the error injured appellant's rights before we may reverse the conviction. We examine the entire record to determine whether appellant suffered *any* actual harm as a result of the preserved charge error. *Arline v. State*, 721 S.W.2d 348, 352 (Tex.Crim. App.1986).

The trial court's failure to submit the requested charge on voluntary manslaughter left the jury with only the alternatives of finding appellant guilty of murder or freeing him. The law does not insist that an accused so situated suffer such extreme options when the accused points to a more moderate choice. The trial court, although aware of the more moderate choice in the form of appellant's requested voluntary manslaughter charge, did not provide it. *Roberts v. State*, 590 S.W.2d 498, 502 (Tex. Crim.App. [Panel Op.] 1979). We cannot conclude that *no* harm resulted from the error. *Brunson*, 764 S.W.2d at 896. We sustain appellant's point of error.

We reverse the trial court's judgment. We remand the case for a new trial.