**AFFIRMED; Opinion Filed July 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01647-CR

### RICARDO BELTRAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1056077-M**

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Lang

This appeal follows a jury conviction and seventy-year sentence for murder. In a single issue, Ricardo Beltran asserts the trial court erred in denying his request for an instruction on sudden passion. We affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Beltran was charged with the capital murder of Sheldon McKnight. Specifically, the State alleged Beltran intentionally caused McKnight's death while in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011).

No dispute existed at trial that McKnight was intentionally killed. McKnight's partially clothed body was found on his bed in his burning apartment, and medical evidence showed he

was stabbed seventy-one times in his upper body and leg, suffered blunt-force trauma to his head, had defensive wounds, and died from the injuries. No dispute existed at trial either that a robbery occurred. McKnight's apartment was ransacked and many of his belongings were found in his car, which Beltran had stolen, and in Beltran's apartment. Finally, no dispute existed that Beltran acted in conjunction with his friend, Victor Ramos. Beltran and Ramos were seen with McKnight a few hours before McKnight was killed and were seen fleeing the scene of a one-car accident involving McKnight's car. The only disputed issues at trial were whether McKnight was killed in the course of the robbery, as the State alleged, and whether Beltran acted in self-defense, was justified in using deadly force, and acted under the immediate influence of sudden passion.

The sole witness to testify as to the circumstances surrounding McKnight's death was Beltran. According to Beltran, he and Ramos went to McKnight's apartment to "chill" and for drugs. High from "partying," Beltran fell asleep on McKnight's bed. He awoke a short time later to find McKnight sexually assaulting him.[1] Beltran screamed in panic and moved, but McKnight jumped on him and pushed his face into a pillow.

Hearing Beltran's screams, Ramos came into the room from another room and hit McKnight on the head. McKnight grabbed Ramos, and Beltran grabbed McKnight from behind. Beltran yelled at Ramos "to get some help." However, rather than getting help, Ramos began stabbing McKnight. McKnight began "flailing" and trying to "get . . . loose . . . trying to go toward [Ramos]," but Beltran held tight to McKnight to protect Ramos and himself. Beltran told Ramos again to "[g]et some help." Ramos, though, continued stabbing McKnight, and Beltran closed his eyes "for a while." McKnight continued to struggle, and at some point, Beltran let go of him. Beltran testified McKnight was "getting stabbed everywhere" and "kept moving his

---

[1] Evidence at trial revealed McKnight's DNA was found on Beltran's boxer shorts.

hands." The stabbing continued and "before [Beltran] knew it, [McKnight] was . . . dead." "Panicking" and "shocked," Beltran asked Ramos if they should call the police, but Ramos said "no." The two then fled the apartment, but returned when they realized they had left some of their belongings in the apartment.

Beltran testified that when they returned to get their belongings, Ramos suggested they "should make it seem like a robbery." The two loaded McKnight's car with items from his apartment and drove away in McKnight's car. Asked if his intentions when he went to McKnight's apartment were to rob and kill McKnight, Beltran denied they were and denied he killed or stabbed McKnight. Beltran also denied knowing where Ramos got the knife with which he stabbed McKnight and denied he intended to help Ramos kill McKnight. Asked about the fire, Beltran testified he learned of the fire later, but was "sure" Ramos set it.

Authorized to convict Beltran as a principal or as a party, the jury rejected Beltran's self-defense claim and returned a general verdict finding Beltran guilty of murder. *See* TEX. PENAL CODE ANN. § 7.01(a), 7.02(a)(2) (West 2011). Following the punishment phase of trial, in which Beltran again denied killing McKnight and testified his testimony during the guilt/innocence stage of trial concerning McKnight's death was true, the jury assessed a seventy-year sentence.

## II. SUDDEN PASSION

At trial, Beltran argued an instruction on sudden passion was warranted as a result of his being physically and sexually assaulted by McKnight. In denying the request, the trial court found Beltran's testimony at both the guilt/innocence and punishment phases of trial that he did not kill or intend to help Ramos kill McKnight and that he grabbed McKnight when McKnight went towards Ramos determinative. On appeal, Beltran asserts the trial court's ruling was incorrect because the jury was authorized to convict him under the law of parties, and his testimony that he held and restrained McKnight while Ramos stabbed McKnight was more than

–3–

enough evidence to justify the instruction, even if he denied killing or intending to help kill McKnight. Further, Beltran asserts that, while he grabbed McKnight when McKnight went towards Ramos, his actions were nonetheless provoked by McKnight's conduct toward him and, given how quickly the fight began and ended, he had no time for "calm reflection."

### A. Standard of Review

An appellate court reviewing jury charge error engages in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The first step is to determine if the charge was erroneous. *Id.* The second step, which occurs only if the reviewing court determines error occurred, is to analyze the error for harm. *Id.*

### B. Applicable Law

A defendant who is convicted of murder and raises the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause is entitled, upon timely request, to a jury instruction on sudden passion at the punishment phase of trial. *See* TEX. PENAL CODE ANN. § 19.02(d) ; *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). Sudden passion is a mitigating circumstance that, if proven by a preponderance of the evidence, reduces murder from a first degree felony, which carries a maximum punishment of life imprisonment, to a second degree felony, which carries a maximum punishment of twenty years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32, 12.33, 19.02(d); *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). The penal code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

To justify a sudden passion instruction, the record must contain some evidence of both (1) adequate cause arising out of the victim's, not the defendant's, own making; and (2) sudden passion demonstrated by the defendant acting in an excited and agitated state of mind at the time of the killing. *See Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.-–Houston [1st Dist.] 2011, pet. ref'd); *Merchant v. State*, 810 S.W.2d 305, 310 (Tex. App.-–Dallas 1991, pet. ref'd). Additionally, the record must "minimally support" a causal connection "between the provocation, passion, and homicide." *Wooten*, 400 S.W.3d at 605 (quoting *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). Whether the evidence in the record is weak, impeached, contradicted, or unbelievable is irrelevant. *Id.*

## C. Application of Law to Facts

Beltran argues his testimony that he held and restrained McKnight while Ramos stabbed McKnight was more than enough evidence to justify an instruction on sudden passion. We disagree. As stated, the record must contain some evidence that the defendant acted in an excited and agitated state of mind at the time of the killing. The record, here, however, reflects the contrary.

Beltran was the sole witness who testified regarding the circumstances surrounding McKnight's death. He said his reaction to finding McKnight assaulting him was to move and scream in panic. He testified he was personally unable to react to McKnight's pushing his face into the pillow. After Ramos hit McKnight on the head and McKnight released Beltran, Beltran said he was able to grab McKnight. He grabbed McKnight to protect Ramos and himself and to give Ramos an opportunity to get help. We conclude Beltran's testimony that he moved away from McKnight, grabbed and held McKnight to keep McKnight from him and Ramos, and told Ramos to get help shows Beltran was consciously aware of the danger McKnight posed, tried to get control of the situation, and acted with thought, not in an excited and agitated state. *See* ,

–5–

*e.g.*, *Moore v. State*, 969 S.W.2d 4, 15 (Tex. Crim. App. 1998) (Keller, J., concurring and dissenting) ("Evidence of adequate cause does not automatically raise the issue of sudden passion: 'There could be evidence of a cause which could produce anger, rage, resentment, or terror adequate to make an ordinary person incapable of cool reflection, but no evidence that the accused acted in an excited and agitated state of mind at the time of the killing.'") (quoting *Merchant*, 810 S.W.2d at 309-10); *Jones v. State*, 687 S.W.2d 425, 428 (Tex. App.-–Dallas 1985, pet. ref'd) (finding no evidence of sudden passion, only a conscious awareness of danger where defendant who was being chased by victim saw victim reach for kitchen drawer where knives stored, surmised victim was reaching for knife, and fatally stabbed victim before she could reach for knife).

On this record, we conclude there is no evidence Beltran caused McKnight's death under the immediate influence of sudden passion. Accordingly, the record does not "minimally support" a causal connection between the provocation and homicide. We conclude the trial court did not err in denying the requested instruction. *See Wooten*, 400 S.W.3d at 605. Beltran's sole issue is decided against him.

### III. CONCLUSION

We affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121647F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RICARDO BELTRAN, Appellant

No. 05-12-01647-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1056077-M.
Opinion delivered by Justice Lang. Justices Moseley and Brown participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.


Judgment entered this 22nd day of July, 2014.