**AFFIRMED; Opinion Filed November 30, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00669-CR**

**DAVID MARTIN RUIZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-81281-2017**

# MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

The trial court convicted appellant David Martin Ruiz of murder and assessed punishment at life imprisonment. In three issues, appellant contends the trial court erred by failing to conduct a hearing on his motion for new trial; that the trial court violated appellant's constitutional rights by determining appellant knowingly and voluntarily waived his right to a jury trial; and that the evidence is insufficient to support the trial court's implied negative finding on the issue of "sudden passion." We affirm.

### DISCUSSION

### 1. Motion for New Trial

In his first issue, appellant contends the trial court violated his constitutional rights under the Sixth and Fourteenth Amendments and Article I, section 10, of the Texas Constitution by failing to hold a hearing on appellant's motion for new trial, which raised the issue of ineffective

assistance of counsel during the trial process. Appellant argues a hearing was required because he raised a claim of ineffective assistance of counsel and that the affidavit attached to the motion demonstrated that (1) the matter raised was not determinable from the record and (2) there were reasonable grounds to support potential relief.

A motion for new trial must be "presented" to the trial court within ten days of its filing. TEX. R. APP. P. 21.6; *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017); *Smith v. State*, No. 05–16–00466–CR, 2017 WL 4247964, at *1 (Tex. App.—Dallas Sept. 25, 2017, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 05–16–00422–CR, 2017 WL 3275902, at *2 (Tex. App.—Dallas July 31, 2017, no pet.) (mem. op., not designated for publication). "This means the defendant must give the trial court actual notice that he timely filed a motion for new trial and requests a hearing." *Obella*, 532 S.W.3d at 407 (quoting *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005)). Merely filing the motion for new trial is insufficient to show presentment. *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009). "The rationale for requiring presentment is the same as that which supports preservation of error generally." *Obella*, 532 S.W.3d at 407.

> Absent a proper objection that alerts the trial court to the erroneous admission, the error has not been preserved for appellate review. Thus, a reviewing court does not reach the question of whether a trial court abused its discretion in failing to hold a hearing if no request for a hearing was presented to it.

*Id.* (quoting *Rozell*, 176 S.W.3d at 230).

The record in this case shows that appellant's motion for new trial and motion in arrest of judgment was filed on June 26, 2017. There is no indication in the record, however, that the motion was presented to the trial court. The trial court never ruled on the motion and the only notation in the docket sheet is that the motion was filed. Because the record does not show the motion for new trial was actually presented to the trial court, the issue of whether the court erred in denying appellant's motion for new trial without conducting a hearing is not preserved for our review. *See*

*Obella*, 532 S.W.3d at 407; *Smith*, 2017 WL 4247964, at \*2; *Johnson*, 2017 WL 3275902, at \*2. We overrule appellant's first issue.

## 2. Jury Waiver

In his second issue, appellant argues the trial court violated appellant's constitutional rights under the Sixth and Fourteenth Amendments and Article I, section 10, of the Texas Constitution by failing to determine whether appellant knowingly, intelligently, and voluntarily waived his right to a jury trial.

Article 1.13 of the Texas Code of Criminal Procedure sets out the requirements for a jury waiver in Texas. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13. Article 1.13 provides in part that the defendant "shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." *Id*.; *Johnson v. State*, 72 S.W.3d 346, 347 (Tex. Crim. App. 2002).

At the end of a May 25, 2017 pretrial hearing, appellant directly asked the trial court "if there's any chance that I can have a trial by a judge instead of by jury." The trial court responded that this was appellant's decision, not the court's, and suggested that appellant talk to his attorney about the decision. The record shows that a written jury waiver was signed and filed the next day, May 26th. The next time a jury waiver is mentioned in the record is at the start of the bench trial five days later, when the trial court stated that it had seen a jury waiver and asked, "[S]o is this a bench trial? How are we proceeding this morning?" The State responded, "Bench trial," to which the trial court replied, "Very well." The State does not dispute that appellant's waiver was not made in person and in open court. By failing to observe the mandatory requirements of article 1.13, the trial court erred because appellant's jury waiver was not conducted in person and in open court. *See Johnson*, 72 S.W.3d at 347.

Even so, however, appellant is not entitled to a reversal because he was not harmed by this error. Because appellant alleges that the waiver was not made in open court, and does not allege that there was no waiver, he is alleging statutory, not constitutional error. *Id*. at 348. Thus, we analyze harm under rule 44.2(b). *See id*.; *see* TEX. R. APP. P. 44.2. If the error does not affect a substantial right, it must be disregarded. *Johnson*, 72 S.W.3d at 348. The lack of a valid waiver under article 1.13 is not harmful when the record otherwise reflects that a defendant waived his right to a jury trial. *Id*. at 349.

Here, there is a written waiver signed by appellant and his attorney stating that he knew he had an absolute right to a jury trial and that he desired to waive his right to a jury. The presence of this written waiver indicates appellant's knowledge of his right to a jury trial. Moreover, it was appellant who initially, directly approached the trial court about the possibility of a bench trial instead of a jury trial. Nor does appellant argue, or the record reflect, that he was unaware of his right to a jury trial. Thus, we conclude the error did not affect appellant's substantial rights and was harmless. *See Johnson*, 72 S.W.3d at 349; *Preston v. State*, Nos. 05–14–01131–CR, 05–14–01132–CR, 05–14–01133–CR, 2015 WL 4241406, at \*5 (Tex. App.—Dallas Jul. 14, 2015, no pet.) (mem. op., not designated for publication); *Hutchinson v. State*, No. 11–12–00124–CR, 2014 WL 2957398, at \*10 (Tex. App.—Eastland June 26, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's second issue.

### 3. Sudden Passion

In his third issue, appellant contends the evidence is insufficient to support the trial court's implied rejection of the claim that he was acting under the immediate influence of sudden passion arising from adequate cause.

At the punishment stage of a murder trial, the defendant may raise the issue as to whether he caused the death "under the immediate influence of sudden passion arising from an adequate

cause." TEX. PENAL CODE ANN. § 19.02(d); *Beltran v. State*, 472 S.W.3d 283, 289 (Tex. Crim. App. 2015); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). A defendant has the burden of production and persuasion with respect to his claim that he caused the victim's death under the immediate influence of sudden passion. *Wooten*, 400 S.W.3d at 605. When a defendant establishes by a preponderance of the evidence that he caused a victim's death under the influence of sudden passion, the offense level is reduced from a first-degree to a second-degree felony. TEX. PENAL CODE ANN. § 19.02(d); *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003).

"Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1).

"'Sudden passion' requires first that the record contain objective evidence that direct provocation by the victim or someone acting with the victim occurred at the time of the killing." *Naasz v. State*, 974 S.W.2d 418, 423–24 (Tex. App.—Dallas 1998, pet. ref d) (citing *Merchant v. State*, 810 S.W.2d 305, 310 (Tex. App.—Dallas 1991, pet. ref'd)). "Evidence of prior provocation alone is not enough"; the provocation must be of such a nature that it elicits more than mere "ordinary anger." *See id*. at 423–24. The record must also contain evidence from which the trier of fact "could subjectively decide the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation." *Id*. at 424. "Neither ordinary anger nor fear alone raises an issue on sudden passion arising from adequate cause." *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Mere yelling and pushing will also generally not constitute adequate cause sufficient to raise an issue of sudden passion. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005); *Shannon v. State*, No. 08–13–

00320–CR, 2015 WL 6394922, at *13 (Tex. App.—El Paso Oct. 21, 2015, no pet.) (not designated for publication).

The Court of Criminal Appeals has held that the *Jackson v. Virginia* standard is the standard reviewing courts should apply to determine the sufficiency of evidence in support of the elements of a criminal offense that the State must prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). But the *Jackson* standard does not apply to elements of an affirmative defense that the defendant must prove by a preponderance of the evidence. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). "Although the issue of sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence." *Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd). Thus, the *Jackson* standard does not apply to review the sufficiency of the evidence supporting the fact-finder's rejection of sudden passion during punishment. *Smith v. State*, 355 S.W.3d 138, 147–48 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)); *see* TEX. PENAL CODE ANN. § 19.02(d). For this reason, we conduct both a legal and factual sufficiency review in addressing this issue. *Gaona*, 498 S.W.3d at 710; *Bradshaw v. State*, 244 S.W.3d 490, 502 (Tex. App.—Texarkana 2007, no pet.); *see also Matlock*, 392 S.W.3d at 667.

When reviewing a legal sufficiency challenge to a negative finding on sudden passion, the standard of review is the same as the legal sufficiency standard used in civil cases. *Gaona*, 498 S.W.3d at 710–11; *Smith*, 355 S.W.3d at 147–48. We first review the record for a scintilla of evidence to support the trier of fact's negative finding on sudden passion and disregard all evidence to the contrary unless a reasonable fact finder could not. *Gaona*, 498 S.W.3d at 711; *Smith*, 355 S.W.3d at 147–48. If we find no evidence that supports the trier of fact's finding, we determine whether the contrary proposition was established as a matter of law. *Gaona*, 498 S.W.3d at 711; *Smith*, 355 S.W.3d at 148. We defer to the fact finder's determination of the credibility of the

testimony and weight to give the evidence. *Gaona*, 498 S.W.3d at 711; *Smith*, 355 S.W.3d at 148.

In addressing a factual sufficiency challenge to the trier of fact's negative finding of sudden passion, we consider all the evidence in a neutral light, bearing in mind that the trier of fact assesses the weight of the evidence and the credibility of the witnesses' testimony. *See Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Matlock*, 392 S.W.3d at 671. We will sustain a defendant's factual sufficiency claim only if the verdict is so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Butcher*, 454 S.W.3d at 20; *Matlock*, 392 S.W.3d at 671; *Jamison v. State*, No. 05–16–00086–CR, 2016 WL 1725489, at *6 (Tex. App.—Dallas April 27, 2016, pet. ref'd) (mem. op., not designated for publication).

Appellant was indicted for murder. The indictment against him alleged that, on or about May 31, 2008, he did:

> Intentionally or knowingly cause the death of an individual, namely Adrain Porier, hereinafter styled deceased, by stabbing deceased with a knife, a deadly weapon;
>
> Intentionally or knowingly cause the death of an individual, namely Adrain Porier, hereinafter styled deceased, by stabbing deceased with a sharp object, a deadly weapon;
>
> Intentionally or knowingly cause the death of an individual, namely Adrain Porier, hereinafter styled deceased, by stabbing deceased with an object, a deadly weapon, whose exact nature is unknown to the Grand Jurors;
>
> With intent to cause serious bodily injury to an individual, namely Adrain Porier, hereinafter styled deceased, commit an act clearly dangerous to human life that caused the death of the deceased by stabbing deceased with a knife, a deadly weapon;
>
> With intent to cause serious bodily injury to an individual, namely Adrain Porier, hereinafter styled deceased, commit an act clearly dangerous to human life that caused the death of the deceased by stabbing deceased with a sharp object, a deadly weapon;
>
> With intent to cause serious bodily injury to an individual, namely Adrain Porier, hereinafter styled deceased, commit an act clearly dangerous to human life that caused the death of the deceased by stabbing deceased with an object, a deadly weapon, whose exact nature is unknown to the Grand Jurors[.]

*See* TEX. PENAL CODE ANN. § 19.02(b).

The State initially questions whether sudden passion was even raised—much less considered—at punishment. Defense counsel argued at guilt/innocence that he believed "adequate cause exists to rise to sudden passion of self-defense or whatnot." In his closing argument at the punishment hearing, defense counsel stated, "I believe we've raised some issues here in this phase. It leads to examine whether there was an immediate influence to cause—adequate cause for the actions of [appellant]." In the punishment phase, appellant testified that he was sexually abused when he was in prison in Arizona and that this may have influenced what happened that night. But there was no mention of sudden passion in appellant's testimony or in defense counsel's closing argument at punishment. Nor did the trial court make any negative finding in that regard. Even so, however, we need not resolve this question because even if we assume the issue was adequately raised, appellant failed to carry his burden of proving by a preponderance of the evidence that he acted in sudden passion when he stabbed the victim.[1]

With this in mind we review the evidence, which shows that in May of 2008, appellant was living with Philip Demming and the victim in this case, Adrain Porier, at an apartment complex in Plano. Porier and Demming became friends in the eighth grade and had known each other for approximately 15 years. Porier and appellant met while they were participating in laboratory studies for various drugs; appellant did not have a place to stay. Porier invited appellant to stay at the apartment.

Demming was not comfortable around appellant, testifying that he had a "strange feeling "about [appellant]" the first time he met him and there "was just something about him that I didn't like." As he got to know appellant, Demming later learned appellant had been in prison and "had a history of being in gangs and gang relations, stuff like that." In fact, appellant's criminal history,

---

[1] In his brief, appellant asserts the State presented no evidence to support a negative finding on sudden passion. Appellant, however, bore the burden on this issue and the State was not required to refute any of appellant's evidence in order for the trial court to reject a claim of sudden passion. *See Gaona*, 498 S.W.3d at 809.

as shown by the State's punishment evidence, included convictions for aggravated driving under the influence, theft from a person, possession of marijuana, endangerment, and aggravated assault. It also showed that appellant had served time in jail and in prison.

The week of the murder, the three men went to a bar, Bullwinkles, where Demming saw appellant start an argument with two men who were playing pool and push one of them to the ground. Demming decided he no longer wanted appellant in the apartment, and appellant was asked to move out. Appellant agreed to move out but returned when he was not able to find another place to live. He apologized, promised not to start any more fights, and was allowed to stay.

On the night of the stabbing, the three men went back to Bullwinkles, where they ordered a pitcher of beer and sat on the patio. Demming left the bar after about an hour. Appellant argued with Porier, the owner of the bar stepped in, and appellant "took a swing" at him. When the owner told appellant he had called the police, appellant jumped a fence and left the bar.

Later that night, Kristin Scarbrough, who lived next door to Demming, heard someone yelling at the people on her balcony from the balcony next door. Appellant was "badgering" Scarbrough's friends and yelling at them, asking them if they had any marijuana. Porier came outside, told appellant to go back inside, and told the group "[t]hat he would handle the situation." There was loud arguing coming from the apartment next door, after which Scarbrough saw Porier's body get slammed against the window. From her balcony she saw Porier push appellant back and step forward, and then saw Porier's body "kind of hunched over." Porier did not move. She noticed blood around his legs and ran inside to find Demming, who was at her apartment, telling him "something wasn't right" and that they "needed to get over there and see what was going on."

Appellant came back onto the apartment balcony. When Scarbrough and her friends asked him what happened, appellant said he had "knocked him the fuck up." Appellant did not seem concerned. "Pretty much everyone" in Scarbrough's apartment ran over to check on Porier, and

Scarbrough called 911. That 911 call, which was recorded and admitted into evidence, was made on Saturday, May 31, 2008, at 12:36 a.m.

Appellant fled the apartment with a knife in his hand and carrying two bags—one bag across his body and the other over his shoulder. Scarbrough and her boyfriend chased him while she was on the phone with the 911 operator, but they eventually lost sight of him. Porier died of multiple stab wounds to his abdomen and left leg. Police and the U.S. Marshals Service searched for appellant. He was apprehended in January of 2016 while crossing the border from Mexico into Arizona.

Appellant testified that on the night of the murder, he, Porier, and Demming went to Bullwinkles and had approximately three shots of Patron and Corona, and ordered several pitchers of beer. Appellant denied that Demming left the bar before him and testified that the three men left the bar together, at around 11:30 p.m. or 12:00 a.m. Appellant also testified that he did not remember getting into a fight with the owner of the bar or that the owner called the police. According to appellant, he was drunk when they left the bar and Demming and Porier walked him home. The men stopped near an auto repair shop and appellant started feeling "paranoid," thinking Porier and Demming were going to do something to him. He wrestled with Demming, and Porier grabbed appellant around the neck from behind.

Appellant suddenly realized Demming and Porier were his friends, and he "played dead" so that Porier would release him. Appellant remembered waking up sometime later on the couch in the apartment. Porier told him he had to leave the apartment, and that he should collect his things and leave immediately. Appellant told Porier he had "been kicked out of better places," and, when he turned to leave, Porier just started punching him. Appellant was in a daze and tried to get away, but Porier just kept punching him. Appellant had grabbed a knife from the kitchen and when Porier moved to punch him, he ducked down and pushed toward Porier to avoid the

–10–

punches. He still had the knife in his hand when he pushed toward Porier. Porier fell down, and appellant ran for the door. Appellant grabbed his bag and pushed past the neighbors to leave the apartment.

Appellant testified that he ran away because he thought the neighbors were going to hurt him, and that he was just following Demming, who was running in front of him. At some point, appellant fell into a creek and laid there "for a while." Appellant later returned to the apartment when it was still dark outside but he saw only yellow tape over the door—no police were there— and he "figured" Porier had been taken to the hospital. Appellant made his way to downtown Dallas, where he saw on television that Porier had died. The next day, appellant went to Arizona and eventually made his way to Mexico. According to appellant, he came back to the United States because God told him to come forward and face the charges. On cross-examination, appellant admitted Porier did not have a weapon during the fight, that Porier was stabbed eight times, and that one of the stab wounds was so deep it had an exit point.

Appellant supports his argument that the evidence was sufficient to show he acted in sudden passion by claiming the quarrel that preceded the stabbing was fueled by alcohol and that he acted in anger, rage, resentment, and/or terror when responding to Porier punching him. But the only evidence appellant may have been reacting to a violent provocation by Porier was appellant's own testimony, which the trial court, in its role as the trier of fact, was free to reject. The trial court could have chosen to believe the testimony of the witnesses who said appellant looked like he wanted to fight, that he stabbed Porier repeatedly, announced he had "knocked him the fuck up," and that appellant did not appear concerned about what had happened. Moreover, appellant's argument appears to be that he acted in fear when he pushed Porier away with the knife in his hand. Yet, as we noted earlier, neither ordinary anger nor fear alone raises an issue on sudden passion arising from adequate cause. *See Moncivais*, 425 S.W.3d at 407.

Because some evidence exists to support the trial court's implied negative finding on sudden passion, the record satisfies the first part of the legal sufficiency standard and we need not consider the second part of the analysis. *See Gaona*, 498 S.W.3d at 711; *Moncivais*, 425 S.W.3d at 408. We likewise conclude, after reviewing all of the evidence in a neutral light, that the trier of fact's implied rejection of the claim of sudden passion is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Consequently, the evidence is also factually sufficient to support the court's implied negative finding on sudden passion. We overrule appellant's third issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47.2(b)
170669F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID MARTIN RUIZ, Appellant

No. 05-17-00669-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-81281-2017.
Opinion delivered by Justice Myers.
Justices Evans and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of November, 2018.